UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BUCHANAN, et al.,

       Plaintiffs,

                                   File No. 1:12-CV-1065

v.

                                  HON. ROBERT HOLMES BELL

ROBERT BOSCH LLC, et al.,

       Defendants.

_____/

# O P I N I O N

This matter is before the Court on Defendant Robert Bosch LLC's[1] motion to dismiss Plaintiffs' second amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  (Dkt. No. 40.)  For the reasons that follow, this motion will be granted.

## I.

Plaintiffs are former employees of General Motors (GM), Bosch, and Delphi Corporation, who are now retired.  (Dkt. No. 27, Second Am. Compl. ¶¶ 10-19; Dkt. No. 31, Answer ¶¶ 10-19.)  Plaintiffs all worked for GM before 1988, at which time GM sold its diesel fuel injection business to Bosch.  (*Id.*)  Starting in 1988, Plaintiffs worked for Bosch until its plant closed in 2003.  (*Id.*)  Then from 2003 to 2006, Plaintiffs worked for Delphi until it closed in 2006.  (*Id.*)  Plaintiffs are each members of the United Auto Workers

---

[1]Robert Bosch LLC was formerly known as the Diesel Technology Company.

(UAW), and they contend that while working for Delphi they became participants in the "Special Attrition Program" (SAP) employee benefit plan. (Second Am. Compl. ¶¶ 10-19.) The SAP was a 2006 agreement between GM, Delphi, and the UAW, which provided a "30 and out" pension benefit to participants, providing them with unreduced benefits regardless of their age of retirement so long as they had at least thirty years of credited service. (Dkt. No. 1, Ex. A, SAP.) Plaintiffs contend that Bosch, in a 2006 letter, promised Plaintiffs that Bosch would cover their participation in the SAP and pay a pro rata share of the "30 and out" pension based on their years of service with Bosch. (Second Am. Compl. ¶ 22; Dkt. No. 1, Ex. C, 2006 Letter.) Bosch disputes that this letter provided any such assurance. (Dkt. No. 41, PageID# 219-20.)

In 2008, Plaintiffs received a letter from Delphi stating that Bosch would not pay a pro rata share of the "30 and out" pension and would instead pay a deferred vested benefit[2] in accordance with its own pension plan. (Dkt. No. 1, Ex. E, 2008 Letters.) Delphi indicated that it was discussing the matter with Bosch and promised, in the interim, to pay Bosch's pro rata share of the pension benefits. (Id.) A subsequent 2008 letter indicated that GM would also not pay a pro rata share of the Plaintiffs' "30 and out" pensions because at the time of its 1988 sale of its diesel fuel injection business to Bosch, GM transferred the assets, liabilities, and all pension benefit responsibilities related to Plaintiffs' accrued pre-1988

---

[2]Unlike the "30 and out" pension benefits, receipt of Bosch's deferred vested benefits is contingent upon the participant reaching retirement age. (Dkt. No. 41, at 5.) Bosch's pension plan participants may commence receiving unreduced benefits at age 65 or, alternatively, commence receiving reduced benefits at age 55. (Id. at 6.)

credited service at GM to Bosch. (*Id.*) In response to GM's position, Delphi promised to pay both GM and Bosch's pro rata shares. (*Id.*) In 2010, Plaintiffs received a letter from GM indicating that the pension assets and liabilities pertaining to Plaintiffs' Delphi credited service had been transferred from Delphi to GM but without extra money to continue paying Bosch's pro rata share. (Dkt. No. 1, Ex. F, 2010 Letter.) Consequently, GM stated that starting July 1, 2010, it would only pay pension benefits for the time accrued at GM and Delphi (including the pre-1988 time accrued at GM),[3] reducing the Plaintiffs' monthly pension benefits. (2010 Letter.)

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory

---

[3]GM did state that it would include the time accrued at Bosch for eligibility purposes. (2010 Letter.)

allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 545 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III.

Bosch contends that Plaintiffs' entire case fails because Bosch is not a party to the SAP and Bosch never made any assurances to Plaintiffs that Bosch would pay a portion of their "30 and out" pension benefits pursuant to the SAP. Additionally, Bosch contends that Plaintiffs' individual claims fail for multiple other reasons: (1) Count I (equitable estoppel) because of ERISA's exhaustion requirement, the fact that it seeks relief not cognizable under ERISA, and Plaintiffs' failure to plead the requisite elements; (2) Count II (breach of fiduciary duty) because Bosch is not a fiduciary under the SAP and thus relief is not cognizable under ERISA; (3) Count III (ERISA enforcement of substantive rights) for lack

4

of standing;[4] (4) and Count IV (recovery of ERISA benefits) because Plaintiffs never exhausted administrative remedies. Because Bosch is entitled to dismissal based on the fact that Bosch has no obligations under the SAP and never made a promise otherwise, the Court declines to reach the additional arguments for dismissal.

**A. The SAP Agreement**

Bosch is not bound by the plain language of the SAP. As Plaintiffs admit, the SAP was negotiated between the UAW, GM, and Delphi, and only signed by those parties. (Dkt. No. 47, PageID# 268; SAP.) Bosch is not a fiduciary, administrator, or plan sponsor of the SAP, as defined by ERISA. A fiduciary must be named in the plan (or identified pursuant to a procedure specified in the plan) and have authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a). An administrator must be designated by the terms of the plan or the plan sponsor. 29 U.S.C. § 1002(16). An employer is only a plan sponsor if the employer establishes or maintains the plan. *Id.* Bosch was not named in the plan in any capacity and lacks the requisite control over the plan to constitute a fiduciary, administrator, or plan sponsor. Thus, because there can be no dispute that Bosch is not bound by the plain language of the SAP, all of Plaintiffs' causes of action depend on Bosch having made a material written representation to Plaintiffs in the 2006 letter (or through some other means) such that equity would require the Court to consider Bosch a fiduciary and hold it to its representation.

---

[4]Plaintiffs have stipulated to the dismissal of Count III in their response brief. (Dkt. No. 47, at 24.)

**B. 2006 Letter**

Bosch contends that the factual allegations in the amended complaint and the documents attached as exhibits fail to suggest any Bosch agreement or assurance to participate in or abide by the terms of the SAP.  The only assurance specified in the amended complaint is the 2006 letter sent by Bosch to Plaintiffs.  (Second Am. Compl. ¶¶ 22, 30, 33.) This letter is mentioned in Count I as the basis for the equitable estoppel claim.[5]  (*Id*. ¶ 46.)

In response to Plaintiffs' inquiries regarding the pensions of former employees who had returned to GM or Delphi, the 2006 letter provided as follows:

> [Bosch] will not change the historical handling of benefit applications from otherwise eligible former employees who retire from GM or Delphi under Normal, Early – 85 Point, Early – 30 and Out, or Total and Permanent Disability retirements.  In other words, we will continue to match the form of benefit provided by GM or Delphi in such cases and use years of [Bosch] service in the calculation of benefits.

(2006 Letter.)  Plaintiffs interpret this letter[6] as a promise to cover Plaintiffs' participation in the SAP.  The Court finds this factual inference unwarranted.  The excerpt only states that Bosch will match *the form of benefit provided by GM and Delphi*.  While Plaintiffs urge the Court to make the inference that "form of benefit" means "accrued benefit" (i.e. a pro rata

---

[5]Because Counts II and IV also seek recovery under ERISA, those counts are contingent on Plaintiffs' ability to establish Bosch as a SAP fiduciary under Count I.

[6]Plaintiffs' alternative argument that the 2006 letter is an ERISA plan and should be interpreted *contra proferentum* (construing ambiguous plan language against the drafter) is frivolous and will not be addressed.  A letter signed by a plant manager without authority to amend pension plans, not published to participants, not adopted by Bosch, and not agreed to by any other party is not an ERISA plan.

share of the unreduced benefits, regardless of age, available under the SAP) or "benefit program" (i.e. "30 and out"), there is no support in the letter for such a strained reading that eliminates the limiting words "form of." The phrase "form of benefits" is not ambiguous; as Bosch points out, "form of benefit" typically refers to how benefits are distributed. This is how the term is used in ERISA. *See* 29 U.S.C. § 1055(c)(1)(A)(i) (referring to "the qualified joint and survivor annuity form of benefit"). This is also how the Sixth Circuit has defined the phrase:

> "[O]ptional form of benefit" [is] not defined in the Retirement Equity Act which revised ERISA section 204(g) in 1984 . . . . Specific statutory definition of the term[] is not necessary, however, in light of the plain and widely understood meaning of the term[]. . . . An optional form of benefit is generally one that involves the power or right of an employee to choose *the way in which payments due to him under a plan will be made or applied.*

*Ross v. Pension Plan for Hourly Emp. of SKF Indus., Inc.*, 847 F.2d 329, 333 (6th Cir. 1988); *accord Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1059 (7th Cir. 2009); *see also Clemons v. Norton Health Care Inc. Ret. Plan*, 271 F.R.D. 562 (W.D. Ky. 2011) (referring to "an increasing annuity as his or her basic form of benefit"); *Richmond v. NCR Corp.*, 227 F. Supp. 2d 802, 807 (S.D. Ohio 2002) ("[E]veryday usage instructs that a reference to 'pension' benefits bears no obvious relation to other forms of benefits, such as those for health and life insurance.").

Moreover, the inference Plaintiffs ask the Court to draw is unreasonable because the letter explicitly states the following:

In addition, at present [Bosch] will pay *deferred vested pension benefits* for

> former employees whose seniority at GM or Delphi broke time – for time prior
> to their return to GM or Delphi *or who have chosen to have GM or Delphi*
> *buyout their seniority under the Supplement to the Special Attrition Program*.

(2006 Letter (emphasis added).)  Thus, the 2006 letter addresses former Bosch employees

who are SAP participants (i.e. Plaintiffs) and directly states that Delphi will pay its own

pension benefits – deferred vested benefits.

**B. Ignoring the Letter**

Alternatively, Plaintiffs contend that even if the Court ignores the letter there is a fact

question that should be submitted to the jury.  The basis for this argument is that statements

from Delphi and GM go to show that Bosch did agree to pay a portion of the SAP.  The

Court disagrees.  The 2008 letters from Delphi state only the following:

> When the SAP was offered to you, it was Delphi's *expectation* that each
> company (Delphi, GM, and DTC/Bosch) would consider you eligible for
> voluntary retirement with 30 years of credited service based on combined
> credited service from all three companies.  Delphi also expected that each
> company would pay a pro-rata portion of your "30 and out" pension based on
> service accrued at each company.

(2008 Letters (emphasis added).)  Delphi's "expectation" does not imply an agreement or

promise between Delphi and Bosch that Bosch would be bound by the SAP.  In fact, the 2008

letters imply the opposite of an agreement because Delphi indicated that it was discussing

the matter with Bosch and attempting to reach an agreement, which would have been

unnecessary if there was an agreement or promise to which Delphi could point.  (*Id.*)

Plaintiffs have even pleaded that there was no agreement between Bosch and Delphi.

(Second Am. Compl. ¶¶ 31, 35.)  Moreover, even if this letter created a factual question as

to a promise made from Bosch to Delphi, it in no way serves as evidence of a promise from

Bosch *to Plaintiffs*. Without a sufficient allegation regarding a misrepresentation to Plaintiffs, they cannot make out an equitable estoppel claim against Bosch.

Last, Plaintiffs point to a statement in GM's 2010 letter which they contend implies that when GM sold Bosch its business, Bosch received all assets, liabilities, and pension benefit responsibilities related to the "30 and out" pension policies. However, GM sold its business to Bosch in 1988, long before the SAP was ever agreed to in 2006. Thus, any "sales agreement" regarding that sale is irrelevant to whether or not Bosch promised to pay a portion of the SAP benefits.

## IV.

The Court is not required to accept unwarranted factual inferences in deciding a motion to dismiss. *In re Travel Agent*, 583 F.3d at 903. The exhibits attached to the complaint conclusively establish that Bosch was not a party to the SAP and was not bound by the SAP. Moreover, the second amended complaint only raises one purported promise from Bosch to pay a portion of the SAP benefits, a 2006 letter. However, that letter unambiguously states the Bosch will not pay accrued benefits under the SAP but instead will pay deferred vested pension benefits to former employees who have chosen to participate in the SAP. The complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief against Bosch that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Thus, the motion will be granted and Bosch will be dismissed.

An order consistent with this opinion will be entered.

Dated: <u>March 27, 2013</u>          <u>/s/ Robert Holmes Bell</u>
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE