UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BUCHANAN, et al.,

       Plaintiffs,

                                File No. 1:12-CV-1065

v.

                                HON. ROBERT HOLMES BELL

ROBERT BOSCH LLC, et al.,

       Defendants.

_____/

**O P I N I O N**

On March 27, 2013, the Court granted Defendant Robert Bosch LLC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 55, 56.) Presently before the Court is Defendant General Motors' motion for judgment on the pleadings. (Dkt. No. 49.) For the reasons that follow this motion will be granted.

**I.**

Plaintiffs are former employees of General Motors (GM), Bosch, and Delphi Corporation, who are now retired. (Dkt. No. 27, Second Am. Compl. ¶¶ 10-19; Dkt. No. 31, Answer ¶¶ 10-19.) Plaintiffs all worked for GM before 1988, at which time GM sold its diesel fuel injection business to Bosch. (*Id.*) Starting in 1988, Plaintiffs worked for Bosch until its plant closed in 2003. (*Id.*) Then from 2003 to 2006, Plaintiffs worked for Delphi until it closed in 2006. (*Id.*) Plaintiffs are all members of the United Auto Workers (UAW), and they contend that while working for Delphi they became participants in the "Special Attrition Program" (SAP). (Second Am. Compl. ¶¶ 10-19.) The SAP was a 2006 agreement

between GM, Delphi, and the UAW, under which eligible workers could enter into a pre-retirement program.[1]  (Dkt. No. 1, Ex. A, SAP.)  Plaintiffs contend that the SAP was an employee benefit plan.  (Second Am. Compl. ¶ 5.)  They further contend that the SAP promised them pension benefits based on their combined credited service between GM, Bosch, and Delphi.  (*Id.* ¶ 24.)  However, the SAP, by its own terms, was a "pre-retirement program" under which participants would receive wages and would retire "without additional incentives" when they received thirty years of credited service "under the provisions of the Delphi Hourly-Rate Employees Pension Plan."  (Dkt. No. 1, Ex. A, SAP, § 3(b)(i)-(iii).)  No provision in the SAP promises any independent or additional pension benefits.  (*Id.*)  Nevertheless, Plaintiffs contend that for a period of time after retirement they were paid pension benefits under the SAP which were based on their years of service at GM, Delphi, and Bosch.[2]  (Second Am. Compl. ¶ 25.)

In 2008, Plaintiffs received a letter from Delphi stating that Bosch would not pay a pro rata share of a "'30 and out' pension" and would instead pay a deferred vested benefit in accordance with its own pension plan.  (Dkt. No. 1, Ex. E.)  There is no indication in this letter or elsewhere of what a 30 and out pension constitutes, who promised to pay such a

---

[1]In its opinion regarding Defendant Bosch's motion to dismiss, the Court stated that the SAP "provided a '30 and out' pension benefit to participants."  (Dkt. No. 55, at 2.)  This language was imprecise.  The SAP did not provide for independent pension benefits.  (*See* Dkt. No. 1, Ex. A, SAP.)

[2]Plaintiffs never explain the nature of the pension benefits allegedly promised by the SAP and received during this time frame, although it appears that Plaintiffs believe they are entitled to a calculation of pension benefits that includes the years they worked at Bosch.

pension, or in what document any such promise was made. (*Id.*) Instead, the letter only indicates "that it was Delphi's expectation" that Delphi, GM, and Bosch would all pay a pro rata share of this 30 and out pension. (*Id.*) In the letter, Delphi indicated that it was discussing the matter with Bosch and promised, in the interim, to pay Bosch's alleged pro rata share of the pension benefits. (*Id.*) A subsequent 2008 letter from Delphi indicated that GM would also not pay a pro rata share of the Plaintiffs' 30 and out pensions because at the time of its 1988 sale of its diesel fuel injection business to Bosch, GM transferred the assets, liabilities, and all pension benefit responsibilities related to Plaintiffs' accrued pre-1988 credited service at GM to Bosch. (*Id.*) In response to GM's position, Delphi promised to pay both GM and Bosch's alleged pro rata shares. (*Id.*) In 2010, Plaintiffs received a letter from GM indicating that the pension assets and liabilities pertaining to Plaintiffs' Delphi credited service had been transferred from Delphi to GM but without the additional money that Delphi was paying for Bosch credited service. (Dkt. No. 1, Ex. F.) GM further stated that it had no obligation to pay such an additional pension benefit. (*Id.*) Consequently, GM stated that starting July 1, 2010, it would only pay pension benefits calculated on Plaintiffs' time accrued at GM and Delphi (including the pre-1988 time accrued at GM),[3] resulting in reduced monthly pension benefits for Plaintiffs. (*Id.*)

## II.

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil

---

[3]GM did state that it would include the time accrued at Bosch for eligibility purposes. (Dkt. No. 2, Ex. F.)

Procedure 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (quoting *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). Motions for judgment on the pleadings pursuant to Rule 12(c) are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Accordingly, the Court must construe the complaint in the light most favorable to Plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Id.* The court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). The factual allegations in the complaint must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

As a preliminary matter, the Court must decide which exhibits it may consider in ruling on GM's motion. GM attached to its brief a memorandum of understanding between Delphi and Bosch, GM's pension plan, and a bankruptcy order regarding the Delphi plan modification. (Dkt. No. 50, Exs. I-K.) Plaintiffs argue that the inclusion of this "extraneous

evidence" means that this Court must either exclude consideration of these exhibits or treat GM's motion as one for summary judgment. Further, Plaintiffs contend that if the Court considers GM's exhibits, it must also consider the exhibits Plaintiffs attach to their response brief (a letter from GM and an email chain involving GM).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Documents attached to a 12(b)(6) or 12(c) motion by a defendant are considered part of the pleadings "if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). "In an ERISA case where the plaintiff references an ERISA plan in his complaint, the Court 'will consider the plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans and they are central to plaintiff's claims.'" *Auto-Owners Ins. Co. v. Edward D. Jones & Co. Emp. Health & Welfare Prog.*, 795 F. Supp. 2d 895, 901 (W.D. Mich. 2010) (quoting *Weiner*, 108 F.3d at 89).

First, GM attaches its pension plan. (*See* Dkt. No. 50, Ex. J.) The GM pension plan is referenced in multiple exhibits attached to Plaintiffs' complaint. (Dkt. Nos. 1-2, Exs. D, F, H.) Moreover, GM's pension plan is central to Plaintiffs' claims which revolve around the proper amount of benefits owed to them by GM. Thus, the Court will consider GM's pension plan. GM also wishes the Court to consider a memorandum of understanding

between GM and Bosch.  (*See* Dkt. No. 50, Ex. I.)  Such memoranda are incorporated into the GM pension plan.  (*See* Dkt. No. 50, Ex. J, Art. IX, § 4.)  Thus, the memorandum of understanding will be considered.  Last, GM has attached a bankruptcy order regarding the Delphi plan modification.  (*See* Dkt. No. 50, Ex. K.)  GM contends that this is not "extraneous evidence" and was included for the convenience of the Court.  Regardless of the motivation behind including this document, it is not referenced in the complaint and does not appear to be central to Plaintiffs' claims; thus, it *is* extraneous evidence and will not be considered.

As for Plaintiffs, they have attached a letter from GM and an email chain involving GM to their response brief.  Because the Court is not treating GM's motion as a motion for summary judgment, the Court will not consider these documents which are not referenced in the complaint and are not central to Plaintiffs' claims.[4]

The Court will address each of the claims in turn pursuant to the standards governing a Rule 12(c) motion.

## A. Count I: Equitable Estoppel

Plaintiffs first assert equitable estoppel under both ERISA and the common law.

---

[4]The Court notes that even if it did consider these documents they would not save Plaintiffs' complaint from dismissal.  Exhibit L is a letter from GM to Plaintiff Buchanan regarding a change in the payment of his pension benefits following the transfer of the assets and liabilities of Delphi's pension plan to GM.  (Dkt. No. 54, Ex. L.)  It states "[y]our benefit will be determined in accordance with the provisions of the GM plan."  (*Id.*)  Exhibit M is an email chain between representatives of the UAW and GM, in which it is stated that participants in the SAP should be reviewed by GM prior to any additional action being taken.  (Dkt. No. 54, Ex. M.)  There is no promise in this document regarding Plaintiffs' pension benefits.

**1. ERISA**

ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief" to redress a violation of any provision of ERISA or to enforce any provision of ERISA. 29 U.S.C. § 1132(a)(3).

"The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 6115 (6th Cir. 1998) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)). However, "under some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3)." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007) (citing *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005)). When an award of benefits pursuant to § 1132(a)(1)(B) would fail to provide "an adequate remedy for the alleged injury to the plaintiffs caused by the breach of fiduciary duties," it is improper to outright dismiss a § 1132(a)(3) claim. *Id.*

Plaintiffs seek equitable relief due to misrepresentations by GM that have allegedly resulted in them receiving fewer pension benefits than they are entitled to under the SAP. Plaintiffs attempt to equate this case with *Gore*. In *Gore*, the district court had dismissed the § 1132(a)(3) claim because if the plaintiff was awarded benefits under § 1132(a)(1)(B), he would no longer have suffered an injury from the alleged misrepresentation and his claim for equitable relief would be moot. *Gore*, 477 F.3d at 841. The Court of Appeals made clear

that such an analysis is insufficient. In addition to determining whether the claim for equitable relief would be moot if the plaintiff succeeds on the claim for benefits, a district court must also determine whether it would be moot if the plaintiff did not succeed on the claim for benefits. *Id.* Only if the equitable claim would be moot in both cases, is it appropriate for a district court to conclude that the alleged injury is "a repackaged denial of benefits claim." *Id.*

If Plaintiffs succeed on their claim for benefits (Count IV) in this case, Plaintiffs will receive the full amount of benefits they deserve in accordance with the ERISA plan along with the full amount of pension benefits wrongfully withheld. This is the same relief Plaintiffs seek through their equitable estoppel claim: "The reduction of the Plaintiffs' pension benefits is in direct violation of the plan terms under the SAP. The original pension amounts should be immediately reinstated and Plaintiffs should be paid a lump sum reflecting the amount they would have received since the reduction had their benefits not been wrongfully reduced." (Second Am. Compl. ¶¶ 56-57.) Thus, if Count IV succeeds, Count I would be moot. On the other hand, if Plaintiffs' claim for benefits fails, it will necessarily be because the alleged reduction in Plaintiffs' benefits did not violate the terms of the SAP. And if the reduction was not wrongful, then Plaintiff's equitable estoppel claim must also necessarily fail because the alleged misrepresentation it depends upon is GM's assurance that it would pay pension benefits *in accordance with* the SAP. (*Id.* ¶¶ 44-46, 53.) Thus, pursuant to *Wilkins* and *Gore*, Plaintiffs' claim for equitable relief pursuant to ERISA

must be dismissed.

## 2. Common Law

The Sixth Circuit has recognized that promissory estoppel is a viable theory in ERISA actions. *Sprague v. Gen. Motors, Inc.*, 133 F.3d 388, 403 (6th Cir. 1998). The elements of a common law estoppel claim are as follows:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.* The Sixth Circuit has since limited equitable estoppel in ERISA cases to situations "where the representation was made in writing and where the plaintiff can demonstrate extraordinary circumstances." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010).

GM argues that none of the three writings listed in the complaint as misrepresentations constitute a representation by GM that it would include years worked at Bosch when calculating pension benefits owed. The Court agrees.

First, Plaintiffs point to the SAP itself. The SAP provides that "Employees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the Delphi Hourly-Rate Employees Pension Plan."[5] (Dkt. No. 1, Ex. A, SAP,

---

[5]There is a parallel provision for GM employees, but Plaintiffs were employees of Delphi when they signed up under the SAP.

§ 3(b)(ii).) Nowhere in the SAP is there a representation that years worked at Bosch count for either reaching 30 years of credited service or for determining the amount of pension benefits owed. Neither can such a promise be implied. Second, Plaintiffs' complaint indicates that the SAP "incorporated by reference provisions in the 2006 GM Hourly Summary Plan Description." (Second Am. Compl. ¶ 45.) The Court is unable to find any reference to the 2006 GM Hourly Summary Plan Description in the SAP. Moreover, even if that summary plan description was incorporated by reference in the SAP, it does not contain any representation that benefits would be calculated using years worked at Bosch. (Dkt. No. 2, Ex. H.)

Relatedly, Plaintiffs argue that the SAP assigns liability to GM for Delphi's promises under the SAP. According to the SAP, "GM agrees to assume and pay OPEB payments to Delphi employees . . . ." (Dkt. No. 1, Ex. A, SAP, § 7(b).) As Plaintiffs admit, OPEB is an acronym for "Other Post-Employment Benefits." (Dkt. No. 54, at 10). This term does not include pension benefits within its scope. *See, e.g., Sw. Bell Tel. Co. v. F.C.C.*, 28 F.3d 165, 169 (D.C. Cir. 1994). Thus, this provision in the SAP cannot be used as a basis for arguing that GM assumed Delphi's liability regarding any pension benefits promised in the SAP. Plaintiffs also point to the SAP provision that "if Delphi reduces or eliminates such coverage provided to its active UAW employees, GM shall subsidize such coverage." (Dkt. No. 1, Ex. A, § 7(d).) This provision explicitly refers to "healthcare and life insurance coverage." (*Id.*) There is no such phrase regarding pension benefits, and the allegations in Plaintiffs'

complaint concern the payment of *pension benefits* only.

The third document referenced by Plaintiffs is an estimate of their pension accounts provided by GM that purportedly included their years with Bosch. (Second Am. Compl. ¶ 50.) However, this document contains no such assurance. The first page is a statement of benefits provide by *Delphi* that does not indicate how the benefits were calculated. (Dkt. No. 1, Ex. D.) The second page is an unrelated letter from GM that states: "This letter is to confirm that [GM] is not currently reducing your pension benefit to collect an overpayment. You are currently receiving your full eligible pension benefit amount of $1,539.46 (gross) per month." (*Id.*) There is nothing on either page representing a promise by GM that pensions benefits from GM would include years worked at Bosch.

In conclusion, the allegations in Plaintiffs' complaint that GM promised in various writings to include years worked at Bosch in calculating pension benefits are contradicted by the very writings themselves. Plaintiffs have not provided the Court with any misrepresentation in writing by GM, let alone shown that extraordinary circumstances might exist in this case. Thus, pursuant to *Bloemker*, Plaintiffs cannot sustain a claim for common law equitable estoppel. Count I of Plaintiffs' complaint consists of nothing more than legal conclusions and unwarranted factual inferences, neither of which this Court is required to accept. *See JPMorgan Chase Bank, N.A.*, 510 F.3d at 581. Because Count I of Plaintiffs' complaint does not contain sufficient factual matter to render their claim for relief plausible, it must be dismissed.

**B. Count II: Breach of Fiduciary Duties**

Plaintiffs' second count, which also seeks equitable relief pursuant to § 1132(a)(3), alleges breach of fiduciary duty. ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). These fiduciary duties must be discharged:

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

. . .

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

*Id.* Plaintiffs allege that GM's actions in reducing Plaintiffs' pension benefits and in refusing to reinstate Plaintiffs' pension benefits are in violation of these fiduciary duties. (Second Am. Compl. ¶ 60.)

"The proper remedy for breaches of fiduciary duty that take the form of denials of plan benefits is [] a suit under § 1132(a)(1)(B)." *Johns v. Blue Cross Blue Shield of Mich.*, No. 2:08-CV-12272, 2009 WL 646636, at *7 (E.D. Mich. Mar. 10, 2009). As with Plaintiffs' equitable estoppel ERISA claim, if Plaintiffs succeed on their claim for benefits pursuant to

§ 1132(a)(1)(B) (Count IV), Plaintiffs will receive the full amount of benefits they deserve in accordance with the ERISA plan along with the full amount of pension benefits wrongfully withheld. Because that is the same relief Plaintiffs seek through this breach of fiduciary duty claim, Count II would be moot. Similarly, if Plaintiffs do not succeed on their claim for benefits, then it will necessarily be because they are currently receiving the full amount of benefits to which they are entitled. In that case, Count II would also be moot because it is dependent on "Defendants' actions in reducing Plaintiffs' pension benefit amounts and in refusing to reinstate Plaintiffs' pension benefits amounts" being in error. (*See* Second Am. Compl. ¶ 60.) Thus, pursuant to *Wilkins* and *Gore*, Plaintiffs' claim for equitable relief pursuant to ERISA for GM's alleged breach of fiduciary duties must be dismissed.

Plaintiffs' reliance on *CIGNA Corp. v. Amara* and *Teisman v. United of Omaha Life Insurance Co.* to dispute this result in misplaced. As stated, in Count II Plaintiffs seek an order requiring GM *to comply with the terms* of the ERISA plan. (*See also* Second Am. Compl., Prayer for Relief, ¶ b (requesting "[p]reliminary and permanent injunctions pursuant to ERISA §502(a)(3), 29 U.S.C. 1132(a)(3), and Fed. R. Civ. P. 65, enjoining the Defendants from discontinuing, reducing, limiting, or terminating the pension benefits *payable to Plaintiffs under the Plan*").) This is not the same as the relief sought in either *CIGNA* or *Teisman*. In *CIGNA*, the Supreme Court held that § 1132(a)(3) could be used as a basis for reforming the terms of an ERISA plan and then ordering the payment of money owed under

those reformed terms. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878-80 (2011). As for *Teisman*, this Court did hold that "when a fiduciary is involved, compensatory relief is a 'typical equitable remedy' available under § 1132(a)(3)." No. 1:11-CV-1211, 2012 WL 5465466, at *3 (W.D. Mich. Nov. 8, 2012). However, that case is distinguishable because the plaintiff sought a monetary remedy to compensate her for material misrepresentations made by the defendant that her deceased husband's life insurance policy had not terminated. Thus, the plaintiff in that case was not seeking compensation under the plan terms. Because Plaintiffs do seek compensation under the plan terms in Count II, which is compensation that will be provided if Plaintiffs succeed on their claim for benefits under Count IV, Count II will be dismissed.

## C. Count III: ERISA Enforcement of Substantive Rights

In Count III, Plaintiffs seek enforcement of substantive rights pursuant to 29 U.S.C. § 1132(l)(1)(B). Plaintiffs have stipulated to the dismissal of this claim without prejudice. (Dkt. No. 54, at 13.)

## D. Count IV: Recovery of ERISA Benefits

Last, Plaintiffs seek recovery of ERISA benefits owed pursuant to 29 U.S.C. § 1132(a)(1)(B). GM argues that this claim must fail because Plaintiffs have not exhausted their administrative remedies and because Plaintiffs have not identified any breach of the GM plan or the SAP.

**1. Failure to Exhaust**

"The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Laird v. Norton Healthcare, Inc.*, 442 F. App'x 194, 197 (6th Cir. 2011). A district court may dismiss an action when a plaintiff has "failed to adequately allege predicate exhaustion of available ERISA administrative remedies." *Borman v. Great Atl. & Pac. Tea Co., Inc.*, 64 F. App'x 524, 529 (6th Cir. 2003).

As a preliminary matter, the Court must determine which is the applicable ERISA plan, the SAP or GM's pension plan. Plaintiffs contend that the SAP is the ERISA plan, while GM argues that the SAP is not an ERISA plan and did not provide for additional pension benefits.

Plaintiffs' argument depends on two letters sent by Delphi. However, these letters are insufficient to establish the SAP as an ERISA plan. The first letter clarifies that "[i]n accordance with the SAP, [Plaintiffs] were given the opportunity to enter into *a pre-retirement program* under which [Plaintiffs] would retire when [they] accrued 30 years of credited service." (Dkt. No. 2, Ex. E, PageID# 42 (emphasis added).) While the letter described Delphi's expectation that GM, Delphi, and Bosch would pay a pro-rata portion of each Plaintiff's "'30 and out' pension" based on service accrued at each company, there is no indication that the SAP itself provided for a pension separate from or in addition to the pensions provided for by Delphi. At most, it appears that Delphi had the expectation that

15

because of the SAP (to which Bosch was not a party) Bosch and GM would consider Plaintiffs eligible for voluntary retirement (and thus unreduced pension benefits for credited service). (*Id.*) However, there is no such provision anywhere in the SAP. (*See* Dkt. No. 1, Ex. A, SAP.) In the second letter, Delphi agreed to continue providing "an administrative accommodation" by paying "in addition to the pension associated with your Delphi credited service, a pension benefit based on your credited service accrued at DTC/Bosch and GM." (*Id.* at PageID# 45.) It appears to the Court that this accommodation was a "make whole" payment designed to compensate Plaintiffs until they started receiving full pension benefits for credited service from Bosch, to which Delphi believed they were entitled. Notably, Delphi only believed that *Bosch* owed these additional benefits at the time: "the DTC/Bosch pension plan currently holds all of the assets relating to your accrued credited service for both your GM and DTC/Bosch periods of employment."[6] (*Id.*)

At most, these letters illustrate a promise to pay additional benefits made by Delphi. They do not show that the SAP was an ERISA plan providing for additional benefits. Importantly, the SAP itself never states that additional pension benefits would be paid to participants. Instead, the SAP refers to itself throughout as "a pre-retirement program." (Dkt. No. 1, Ex. A, SAP.) Moreover, the SAP refers to the provisions of the Delphi Hourly-

---

[6]Note that because "[t]he Delphi Hourly-Rate Employees Pension plan holds only those assets, liabilities, and pension benefit responsibilities relating to your credited service accrued while you were employed by Delphi" (Dkt. No. 2, Ex. E, PageID# 45), the eventual transfer of these assets and liabilities to GM did not include liability for credited service accrued at DTC/Bosch.

Rate Employees Pension Plan and the GM Hourly-Rate Employees Pension Plan for determining years of credited service and for payment of pension benefits. For example, on the copy of the SAP attached to the complaint, Plaintiff Straayer checked the box stating: "I elect to flow back to GM for purposes of retirement. In so choosing I (i) understand that all or some of my pension benefit will be payable *from The Delphi Hourly-Rate Employees Pension Plan* . . . ." (Dkt. No. 1, Ex. A, SAP, PageID# 20 (emphasis added).) Additionally, the terms of the SAP state in parallel provisions that "[e]mployees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the [General Motors or Delphi] Hourly-Rate Employees Pension Plan." (*Id.* PageID# 25-26.) Because the SAP by its own terms is a pre-retirement program and does not independently provide for pension benefits, the SAP is not an ERISA plan.[7]

On the other hand, GM's pension plan is an ERISA plan. And following the transfer of the assets and liabilities pertaining to Plaintiffs' Delphi credited service to GM, Plaintiffs' pensions were payable "from the GM plan."[8] (Dkt. No. 2, Ex. F.) Thus, Plaintiffs were required to exhaust their administrative remedies under the terms of GM's pension plan. GM argues that to the extent the GM plan requires the payment of additional benefits (a

---

[7] Plaintiffs "reserve the right to amend and raise certain state law claims" if this Court finds that the SAP does not qualify as an ERISA plan. (Dkt. No. 54, at 14.) The Court declines to grant Plaintiffs leave to amend because having dismissed the ERISA claims the Court would lack jurisdiction over Plaintiffs' state law claims.

[8] Note that under the terms of GM's agreement with DTC/Bosch, once Plaintiffs "flowed back" to GM, GM again became liable for Plaintiffs' pre-DTC/Bosch credited service with GM. (Dkt. No. 2, Ex. F.)

proposition GM disputes), the GM plan provides for an administrative appeal process which

Plaintiffs did not take advantage of.  According to GM's pension plan:

> 1.  Any employee who disputes a determination with respect to such employee's . . . (ii) credited service under the Pension Plan, (iii) computation of pension benefits or supplements  under the pension plan . . . may file with the Center a written claim on form BA 1, "Employee Claim to Pension Committee."  Such claim shall be filed within 60 days . . . .

> 2. In all cases where the employee has filed a claim on form BA 1, the Pension Committee shall review such claim with the employee, return one copy of form BA 1 to the employee with a written answer to the claim and, if the claim is rejected, the reasons therefor.

> 3. If the employee is not satisfied with the answer, such employee may request the Pension Committee, in writing on form BA 1, to refer the case to the Board for decision.  Such claim shall be filed with the Pension Committee within 60 days . . . .

> 4. If the Pension Committee should fail to agree upon the disposition of any application or authorization or any claim filed be an employee, the case shall be referred to the Board for determination on form BA 2, "Notice of Appeal to Board of Administration."

(Dkt. No. 50, Ex. J. Appendix D, § K.)

Plaintiffs' complaint states that "the Plaintiffs challenged the reduction of their

pensions through the SAP."  (Second Am. Compl. ¶ 39.)[9]  The next paragraph states:

"Plaintiffs proceeded to lodge an appeal through the UAW."  (*Id.* ¶ 40.)  Finally, Plaintiffs

state that "Plaintiffs have exhausted their administrative remedies allotted under the Plan."

(*Id.* ¶ 41.)

---

[9]This paragraph references Exhibit F.  However, Exhibit F is a letter advising Plaintiffs of a benefit reduction.  (Dkt. No. 2, Ex. F.)  It is not evidence of a challenge by Plaintiffs of the reduction.

First, it is impossible for Plaintiffs to have challenged the reduction of their pensions through the SAP. The SAP does not provide any administrative procedure to challenge a denial of benefits because the SAP does not provide for the payment of benefits; pension benefits are paid pursuant to Delphi and GM's pension plans as stated in the SAP. In their response brief, Plaintiffs allege for the first time that they went "through the GM Benefits Center to challenge" the reduction in benefits. (Dkt. No. 54, at 15.) Even if the Court interprets this vague allegation as referring to the filing of a form BA 1 with GM's Pension Committee in conformance with GM's administrative procedures, Plaintiffs concede that they never appealed the denial of their challenge to GM's Board of Administration as required to exhaust their administrative remedies under the GM pension plan. Instead, Plaintiffs lodged an appeal with the UAW, which unsurprisingly has not acted considering the fact that it has no control over GM's pension plan. (Second Am. Compl. ¶ 40.)

Plaintiffs, relying on *VanderKlok v. Provident Life & Accident Insurance Co., Inc.*, 956 F.2d 610, 616-17 (6th Cir. 1992), allege that GM has waived the failure to exhaust defense by failing to comply with the requirements of 29 U.S.C. § 1133 when denying Plaintiffs' benefits. However, § 1133 is only triggered when a "claim for benefits under the plan has been denied," and Plaintiffs have not shown that GM ever denied a request for benefits. Plaintiffs attached two letters from GM to their complaint. The first is explicitly in response to an inquiry by Plaintiff Katsma regarding an overpayment letter received. (Dkt. No. 1, Ex. D.) The letter confirms that GM was not reducing Katsma's pension benefit to

collect an overpayment. (*Id.*) Thus, it was not a response to a challenge by Katsma or a denial of benefits. The second letter was the initial communication to Katsma notifying him of a change in his benefits. (Dkt. No. 2, Ex. F.) Thus, it also did not have to comply with § 1133. Plaintiffs have never pleaded that they made a claim for benefits.

Last, Plaintiffs allege that it would be futile for Plaintiffs to exhaust GM's administrative procedures. "[A] court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). Plaintiffs allege that GM failed to advise Plaintiffs to resort to the administrative procedures outlined in GM's plan, which GM should have done considering the fact that the SAP did not lay out any administrative procedures. First, GM's plan, which lays out administrative procedures, is referenced frequently in the letters attached to Plaintiffs' complaint. (Dkt. Nos. 1-2, Exs. D, F, H.) These letters made it clear to Plaintiffs that GM's plan was governing the pension benefits being paid. (*See* Dkt. No. 2, Ex. F (stating in the subject line "RE: General Motors Hourly-Rate Pension Plan")).) Thus, the Court finds Plaintiffs' argument that they were unaware of these procedures unconvincing. Second, the SAP is not an ERISA plan. The SAP never discusses criteria for determining years of credited service or for payment of pension benefits. It is explicitly "a pre-retirement program." (Dkt. No. 1, Ex. A.) Thus, the fact that the SAP, which does not discuss independent and/or additional pension benefits, does not contain administrative procedures

does not excuse Plaintiffs' failure to take advantage of the administrative procedures GM provides for disputes over pension benefits.

Plaintiffs' complaint and the attached documents establish that Plaintiffs have not sufficiently pleaded exhaustion of administrative remedies. Thus, Count IV will be dismissed.

### 2. Breach of the GM Plan or the SAP

Even if Plaintiffs had exhausted their administrative remedies the Court would still dismiss Count IV. Plaintiffs fail to identify in their complaint, the exhibits attached, or their response brief any provision of the SAP or the GM plan entitling them to the benefits they claim. Plaintiffs' allegation in Count IV that GM's reduction in pension benefits was in direct violation of the terms of "the Plan" fails to reference a single provision of the SAP or of GM's plan. (Second Am. Compl. ¶ 69.) As discussed, the SAP is not an ERISA plan. Moreover, nowhere does the SAP provide for the independent payment of pension benefits, let alone indicate that Plaintiffs are entitled to benefits in the amount they seek. The SAP never discusses how pension benefits are calculated or whether time accrued at Bosch would be included in any benefit calculation. Plaintiffs also point to no any provision in the GM plan entitling them to the amount of benefits they seek. Plaintiffs' conclusory allegations that they are entitled to greater benefits are unwarranted factual inferences. *See JPMorgan Chase Bank, N.A.*, 510 F.3d at 581.

Considering neither the SAP nor the GM plan provide that Plaintiffs are entitled to

the amount of benefits they seek, the allegations in Plaintiffs' complaint are insufficient to render Plaintiffs' claim to relief in Count IV plausible. Thus, in addition to dismissing Count IV for failure to exhaust administrative remedies, the Court will dismiss Count IV for failure to state a plausible claim to relief.

**IV.**

Because Plaintiffs fail to state any plausible claims against GM, GM's motion will be granted and Plaintiffs' complaint will be dismissed in its entirety.

An order consistent with this opinion will be entered.


Dated: <u>April 17, 2013</u>                                   <u>/s/ Robert Holmes Bell</u>
                                                           ROBERT HOLMES BELL
                                                           UNITED STATES DISTRICT JUDGE